**SOLOMON RUBIN**
**JAN MEYER**
**LAW OFFICES OF JAN MEYER & ASSOCIATES, P.C.**
**1029 Teaneck Road**
**Second Floor**
**Teaneck, NJ 07666**
**(201) 862-9500**
        **-and-**
**KIMBERLY C. LAU (*pro hac vice* pending)**
**ANDREW T. MILTENBERG (*pro hac vice* pending)**
**NESENOFF & MILTENBERG, LLP**
**363 Seventh Avenue, 5ᵗʰ Floor**
**New York, NY 10001**
**(212) 736-4500**
*Attorneys for Plaintiff Kevin Parisi*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------------------------X
KEVIN PARISI,                                       :
                                                    :
            Plaintiff,                              :
                                                    :   **Civil Action No:**
            -against-                               :   **Jury Trial Demand**
                                                    :
DREW UNIVERSITY, KAI BOULWARE, and                  :
JACOB LEVY,                                         :   **COMPLAINT**
                                                    :
            Defendants.                             :
-----------------------------------------------------------------------X

      Plaintiff Kevin Parisi ("Plaintiff" or "Parisi"), by his attorneys Nesenoff & Miltenberg, LLP, as and for his Complaint, respectfully alleges as follows:

**THE NATURE OF THIS ACTION**

      1.    This case arises out of the actions taken and procedures employed by Defendant Drew University ("Defendant Drew" or "Drew University") concerning allegations made against Kevin Parisi, a male junior student at Drew University. The allegations were lodged by fellow Drew students, Kai Boulware ("Defendant Boulware") and Jacob Levy (Defendant Levy), falsely accusing Plaintiff Kevin Parisi of nonconsensual sex with Defendant Boulware. These allegations

purportedly referred to what was clearly consensual sexual activity on or about September 24, 2013 (the "Incident").  After that one morning of consensual sex, Defendant Boulware, who did not seek medical attention, discovered that her ex-boyfriend Jacob Levy ("Defendant Levy") had learned of the sexual encounter and would never get back together with Defendant Boulware again if the sex was consensual. Following this discovery, Defendant Boulware and Defendant Levy, acting maliciously and without probable cause, lodged a false complaint against Parisi alleging that the consensual sex was non-consensual.  The following day, in a drastic departure from its established procedures, Drew University removed Parisi from all buildings on campus, with the exception of the cafeteria and his classrooms.

2.      In the ensuing months, Defendant Boulware and Defendant Levy contacted the Madison Police Department for the Borough of Madison County, New Jersey and advised that Parisi had assaulted Defendant Boulware with their ultimate goal of removing Parisi from campus.  After this initial call, Defendant Boulware and Defendant Levy refused to cooperate with the Madison Police Department and ignored the Madison Police Department's repeated attempts to contact them.

3.      When Defendant Drew subjected Parisi to disciplinary action in the form of a pre-investigation removal from campus, it did so in discrimination against him on the basis of his male sex and without affording him due process. Defendant Drew failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to protect the rights of male students.  The decision reached was discriminatory; given the evidence (or lack thereof), a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and removal ordered before any investigation even took place.

4.      Parisi has been greatly damaged by the actions of Defendants: his academic future in the United States is severely damaged; the monies spent on obtaining a college education at Defendant Drew lost; and the real sacrifices made by Parisi's family so that Parisi could receive a quality education have been wasted.  Parisi therefore brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972 and state law.

## THE PARTIES

5.      Plaintiff Kevin Parisi, ("Plaintiff" or "Parisi"), is a natural person, citizen of the United States, and resident of New Jersey.  During the events described herein, Parisi was a student at Drew College and resided on the Drew College campus in Madison, New Jersey at 36 Madison Ave, Madison, NJ 07940.

6.      Upon information and belief, Defendant Drew College ("Defendant Drew") is a private, coeducational liberal arts college in the town of Madison, New Jersey, with an address of 36 Madison Ave, Madison, NJ 07940.  Upon information and belief, Defendant Drew was founded as a seminary in 1867 and became a liberal arts college in 1928.

7.      Upon information and belief, Defendant Kai Boulware ("Defendant Boulware") is a natural person, citizen of the United States, and resident of New Jersey.  During the events described herein, Defendant Boulware was a student at Drew College and resided on the Drew College campus in Madison, New Jersey at 36 Madison Ave, Madison, NJ 07940.

8.      Upon information and belief, Defendant Jacob Levy ("Defendant Levy") is a natural person and citizen of the United States.  During the events described herein, Defendant Levy was a student at Drew College and resided on the Drew College campus in Madison, New Jersey at 36 Madison Ave, Madison, NJ 07940.

3

9.      Parisi, Defendant Levy, Defendant Boulware, and Defendant Drew are sometimes hereinafter collectively referred to as the "Parties."

**JURISDICTION AND VENUE**

10.      This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and under 28 U.S.C. § 1367 because: (i) Plaintiff states claims arising under the Constitution and laws of the United States; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

11.      This Court has personal jurisdiction over Defendant Drew on the grounds that Defendant Drew is conducting business within the State of New Jersey.

12.      This Court has personal jurisdiction over Defendant Boulware by virtue of her residence in the State of New Jersey and the fact that she committed tortious acts that caused injury to Plaintiff in the State of New Jersey.

13.      The Court has personal jurisdiction over Defendant Levy by virtue of the fact that he committed tortious acts that caused injury to Plaintiff in the State of New Jersey.

14.      Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**I.   Agreements, Representations, Covenants &
       Warranties Between Plaintiff and Defendant Drew**

15.      Prior to his enrollment in Drew University, Parisi was a successful high school student at Hunterdon Central Regional High School in Flemington, New Jersey.

16.     Parisi suffers from an anxiety disorder and a digestive disorder and extreme allergies.

17.     After weighing the various factors and considerations, Parisi made a conscious and informed decision to continue his path to a bright future at Drew College, and began classes for the 2011-2012 academic year.

18.     Upon his acceptance, Defendant Drew provided Parisi with copies of its "Daniel's Dictionary," a collection Defendant Drew's policies and procedures. Such documents are also readily available on Defendant Drew's Internet website.

19.     Drew University's Human Rights Policy states, among other things:

> Drew University is committed to maintaining and supporting diversity throughout the Drew community.  Discrimination or harassment in education or employment on the basis of protected class status constitutes a violation of this policy. Protected class status is based on race, creed (religion), color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability, familial status, military service obligation, or nationality. Offensive or unwelcome conduct or repeated differential treatment, as defined in this policy, based upon any of these protected characteristics, is prohibited.

20.     Under Defendant Drew's policies, allegations of sexual misconduct are governed by Defendant Drew's Human Rights Policy.

21.     Defendant Drew's "Human Rights Policy – Policy and Procedures" and "Daniel's Handbook" provide for the following process following an accusation of sexual misconduct:

      a.   Following a formal allegation of sexual misconduct, the school must conduct an "inquiry into the facts and circumstances of an allegation that the Drew University Human Rights Policy has been violated."

      b.   Where the factual inquiry does not result in a dismissal of the complaint, the charged student is to be given a choice between presenting his case in an "Administrative Meeting" or before the "Student Conduct Board."

      c.   At both Administrative Meetings and Student Conduct Board Hearings, the accused is entitled to speak and present witnesses in his or her own defense.

d.  If the accused is found "responsible" for the alleged conduct, he or she will be provided an opportunity to appeal.

22.     Defendant Drew's Human Rights Policy – Policy and Procedures" further provides:

a.  "The University will strive to investigate complaints and make determinations on as expeditious basis as possible.  In matters involving sexual harassment or sexual misconduct, investigations should be concluded within 15 working days of the date of the complaint. Hearings should be concluded within 15 working days of receipt of the matter. Appeals should be resolved within 10 working days of receipt.  Extensions may be granted by the AA/EEO Officer/Title IX Coordinator."

23.     In the Fall of 2011, Parisi traveled to Madison, New Jersey, to join the class of 2015 at Drew University.

## II.  Parisi's Time At Drew University And His First Introduction To Defendant Boulware

24.     Shortly after starting his freshman year at Defendant Drew, Parisi met Defendant Boulware.

25.     For their freshman years (2011-2012), both Parisi and Defendant Boulware resided in Drew University's Tolley Dormitory.

26.     For their sophomore years (2012-2013), both Parisi and Defendant Boulware resided in Drew University's Baldwin Dormitory.

27.     During his freshman and sophomore years, Parisi maintained good academic standing at Drew University.

28.     During his freshman year, Parisi had sexual intercourse with B.L., a female student at Defendant Drew.

29.     At the beginning of his junior year (in or around September 2013), Parisi moved into a Medical single room in Drew University's Hoyt Dormitory due to his digestive disorder and extreme allergies.

30.     In or around September 2013, Defendant Boulware also moved into a room in Drew University's Hoyt Dormitory.

31.     During the morning in question, Parisi and Defendant Boulware agreed to be "cuddle buddies."

**III. The Incident Between Parisi and Defendant Boulware**

32.     On or about 10:00 a.m. on the morning of September 24, 2013, Parisi awoke to find Defendant Boulware sitting on the desk of his dormitory room.  At this time, Defendant Boulware was wearing a t-shirt and yoga pants.   Defendant Boulware had entered Parisi's room without Parisi knowledge or invitation.

33.     Defendant Boulware informed Parisi that her relationship with her boyfriend, Defendant Levy, just ended.

34.     Parisi asked Defendant Boulware whether she wanted to join him in bed. Defendant Boulware answered in the affirmative and walked over to Parisi's bed to lay down next to Parisi under the covers.

35.     After Defendant Boulware laid down, she and Parisi began to hold each other. Following approximately five minutes of holding each other, Parisi and Defendant Boulware kissed each other.

36.     After their kiss, Defendant Boulware stated, "Jacob can never find out I was here or he would never take me back."  Parisi answered "O.K." and attempted to go back to sleep.

37.     Defendant Boulware and Parisi were unable to fall asleep and Defendant Boulware stated, "[B.L.] told me you have a small dick."  Parisi responded by asking "oh yeah?  you wanna see?" Defendant Boulware answered in the affirmative, and Parisi removed his boxer briefs, exposing his penis.

38.     Defendant Boulware then removed her shirt, exposing her breasts, and began to kiss Parisi.  After approximately three minutes of kissing, Parisi asked Defendant Boulware if she wanted to have sexual intercourse.  Defendant Boulware responded in the affirmative.

39.     Parisi asked Defendant Boulware if she wanted him to wear a condom.  Defendant Boulware responded in the affirmative.  Parisi then got out of bed, walked across the room and retrieved a condom from his desk drawer and walked back across the room to the bed.

40.     Parisi placed a condom on his penis and he and Defendant Boulware had consensual sexual intercourse.   Defendant Boulware was on top the entire time.

41.     At the conclusion of the sexual intercourse, Defendant Boulware informed Parisi that he could not tell anyone what had transpired because if anyone found out, Defendant Boulware's boyfriend (Defendant Levy) would not take her back.  Parisi informed Defendant Boulware that he would not tell anyone.

42.     Defendant Boulware left Parisi's room at approximately 11:00 a.m.

**IV.     The Events Leading Up to the False Allegation**

43.     On or about 1:00 p.m. on September 24, 2013, Defendant Boulware walked to the Drew University train station with fellow Drew University student Tori Harvey.

44.     During the walk, Defendant Boulware said "don't judge me, but I have to tell you something."

45.    After Ms. Harvey assured Defendant Boulware that she would not "judge," Defendant Boulware informed Ms. Harvey that she had consensual sexual intercourse with Parisi and that "it was actually good."

46.    Ms. Harvey told Defendant Boulware to take her secret "to the grave" because Defendant Levy would not take her back if he found out the truth.

47.    Later in the day, Defendant Boulware called Ms. Harvey and informed her that she had told Defendant Levy about the sexual intercourse with Parisi.

**V.    The Initial Wrongful Complaint to Drew University**

48.    Sometime after Defendant Boulware left Parisi's room, she returned.  Defendant Boulware informed Parisi that she told her close friend Tori Harvey about the sexual intercourse. Defendant Boulware then reiterated that Parisi should not tell anyone.  Parisi once again agreed not to.

49.    Notwithstanding, on or about the evening of September 24, 2013, Defendant Boulware and Defendant Levy informed Drew University's Public Safety that the sexual intercourse between Defendant Boulware and Parisi was non-consensual.

50.    At approximately 10:00 p.m. on or about September 24, 2013, Defendant Boulware called Parisi to give him a "heads up" that Drew University's Public Safety was informed that the sex was non-consensual.

51.    During the same conversation, Defendant Boulware told Parisi that he should not worry because she would inform Drew University's Public Safety that the sex was consensual and that Defendant Levy forced her to make the false complaint.

52.    The following day, on or about September 25, 2013, Parisi received an email from Drew University setting a meeting between him and Jimmy Remer.

53.     At the meeting with the RA, Parisi was informed that, pending the resolution of the complaint, he would be barred from all campus buildings other than the cafeteria and the buildings he attended class.  Parisi was also told that a no-contact order had been put in place between him and Defendant Boulware and Defendant Levy.

54.     Also on September 25, 2013, Defendant Boulware walked to a class with Ms. Harvey.  While walking, Defendant Boulware informed Ms. Harvey that she had reported the incident to the campus police and informed Drew University's Public Safety that she told Ms. Harvey the sex was non-consensual.  Defendant Boulware then asked Ms. Harvey to lie about what Defendant Boulware originally told her directly after the incident.  Defendant Boulware wanted Ms. Harvey to say that Defendant Boulware told Ms. Harvey the sex was non-consensual when, in fact, she told her just the opposite and said it was "consensual and good".

55.     Upon information and belief, Defendant Boulware's mother telephoned Ms. Harvey to intimidate and scold Ms. Harvey for not lying for Defendant Boulware.

56.     Upon information and belief, in the week following the initial allegation, Defendant Boulware called Kevin Parisi from a blocked telephone number and apologized for "ruining" his life.

57.     Following the telephone call, Parisi informed Defendant Drew that Defendant Boulware had violated the no-contact order.

58.     Defendant Drew did not investigate or sanction Defendant Boulware for her violation of the no-contact order or her comment about "ruining his life".

59.     Despite Parisi's advisement that Defendant Boulware's complaint was false, Defendant Drew did not investigate or sanction Defendant Boulware making a false complaint against Parisi.

10

VI.    **The Misuses and Abuses of Process**

60.    Pursuant to Drew University's Human Rights Policy, fact-finding following a complaint of sexual misconduct may be placed on hold at the request of the local police.

61.    Upon information and belief, a few days after the Incident, in reckless disregard for the truth, Defendant Levy called the Madison Police Department, alleging that Parisi had raped Defendant Boulware.

62.    Upon information and belief, Defendant Levy and/or Defendant Boulware initiated a false complaint with the Madison Police Department with the intent of strengthening Defendant Drew's case against Parisi and with the intent of validating their false complaint against Parisi to Defendant Drew.

63.    As a result of Defendant Drew's knowledge of Defendant Levy's call to the Madison Police Department, Defendant Drew temporarily suspended its internal investigation regarding Parisi, purportedly to allow the Madison Police Department time to investigate the facts stated in Defendant Levy's phone call.  Yet, during this time period, Defendant Drew continued to bar Parisi from campus and, at the same time, refused to corporate with the Madison Police.

64.    Upon information and belief, the Madison Police Department never requested that Drew University place their internal investigation on hold.

65.    Defendant Drew's Director of Public Safety, Chief Robert Lucid, advised Parisi's family that Defendant Drew could not do anything as it was now a "police matter".  Parisi's father advised Defendant Drew that this was not a police matter since Defendant Levy's phone call was merely motivated by jealousy and no formal complaint was ever filed with the Madison Police Department.

66.     For the duration of the semester, Defendant Drew, Defendant Boulware and Defendant Levy all refused to cooperate with Madison Police Department's attempts to investigate Defendant Levy's complaint, including, without limitation refusing to respond to Madison Police Department's requests for documents related to the incident or requests for interviews with Defendant Boulware and Defendant Levy.

67.     Due to the refusal of Defendant Boulware and Defendant Levy to cooperate, the Madison Police Department did not consider the matter under investigation.

68.     Notwithstanding the fact that the matter was not under investigation by the Madison Police Department, Defendant Drew refused to conduct a factual inquiry into Parisi's case or attempt to bring the case to a close.

69.     Finally, on or about November 25, 2013, Defendant Drew resumed its investigation into Defendant Boulware and Defendant Levy's allegations.

70.     On November 25, 2013, Drew University, through Deshawn Cook, Assistant Director of Residence Life, Deputy Title IX Coordinator, sent Parisi an email stating the following:

a.      "I'm not sure if you were asked this during your interview, but I would like to get a sense of how you would like the case resolved. Administratively or through a board hearing? Picking one of the other does not guarantee that this will be the course of action, but we would like to take your inclination into account."  (Emphasis added)

71.     During the investigation, Defendant Boulware, in reckless disregard for the truth, informed Defendant Drew's Human Rights Committee that she had told Ms. Harvey that Parisi had forced himself on her during their sexual encounter.

72.     On or about November 30, 2013, Defendant Boulware contacted Ms. Harvey and asked her to lie to the Human Rights Committee by saying that Defendant Boulware told her that Parisi forced himself on her during their sexual encounter.

73.     Upon information and belief, Defendant Drew failed to interview Ms. Harvey prior to completing its investigation.

74.     On December 4, 2013, Defendant Drew, through Frank Merckx, Assistant Director of Residence Life, Deputy Title IX Coordinator, sent Parisi an email stating the following:

b.              "Please be advised that the fact finding process regarding a complaint of a violation of the Human Rights Policy has been concluded and submitted to my office. After reviewing the fact finding summary, I have decided to assign this to the administrative hearing procedure. If you should have any questions about this decision, please contact me at fcmerckx@drew.edu.   Mr. Robinette will be contacting you with the next steps in this process, including setting a time to meet with him.  He will also be able to help you with any questions you may have about the process going forward."

75.     On December 7, 2013, Ms. Harvey informed a private investigator that Defendant Boulware told her the sexual intercourse with Parisi was "consensual and good."

76.     On December 10, 2013, Parisi informed Defendant Drew, through an email to Stewart Robinette, Director of the Office of Residence Life and Community Standards, that Ms. Harvey had been asked to lie by Defendant Boulware and Defendant Boulware's mother during the course of the investigation.

77.     On or about December 17, 2013, nearly three months after the initial allegation and one day before the end of the fall semester, Drew University, through Stewart Robinette, Director of the Office of Residence Life and Community Standards, sent Parisi an email informing him

13

that he had been found "[n]ot responsible" for the allegations made by Defendant Levy and Defendant Boulware.

78.     To this date, Defendant Drew has refused to release a copy of its investigation to Parisi, despite due demand.

79.     On or about January 17, 2014, the Madison Police Department informed Defendant Drew that, in response to Defendant Levy's phone call, they found no wrongdoing on Parisi's part.

**VII.    Defendant Drew's Mishandling of the Alleged Incident**

80.     Upon information and belief, in violation of Defendant Drew's regulations, Defendant Drew refused to respond to Parisi's complaint that Defendant Boulware violated the school's non-contact order.

81.     Upon information and belief, in violation of Defendant Drew's regulations, the school failed to complete its fact-finding into Defendant Boulware and Defendant Levy's complaint within fifteen days.

82.     Upon information and belief, in violation of Defendant Drew's regulations and without cause to do so, the school barred Parisi from campus for nearly three months.

83.     Upon information and belief, in violation of Defendant Drew's regulations, the school failed to begin an investigation into Parisi's allegations that Defendant Boulware and Defendant Boulware's mother encouraged and attempted to intimidate Ms. Harvey to lie to school investigators.

84.     Upon information and belief, in violation of Defendant Drew's regulations, the school failed to begin an investigation into Parisi's allegations that Defendant Boulware and

14

Defendant Levy falsely and maliciously accused Parisi of engaging in non-consensual sex with Defendant Boulware.

85.     Upon information and belief, in violation of Defendant Drew's regulations, the school failed to consider the dynamic between Defendant Boulware and Defendant Levy as "boyfriend and girlfriend" as motivating reasons for their collusion and conspiracy to falsely and maliciously accuse Parisi of engaging in non-consensual sex with Defendant Boulware.

86.     Upon information and belief, male respondents in sexual misconduct cases at Defendant Drew are discriminated against solely on the basis of sex.  They are invariably subjected to discipline without the benefit of due process.

87.     Drew University Regulations are set up to disproportionately affect the male student population of the Drew University community as a result of the higher incidence of female complainants of sexual misconduct vs. male complainants of sexual misconduct.

88.     Drew University Regulations effectuate a failure of due process for the student population, especially the male student population, in their current state because they are set up to encourage and facilitate the reporting of false reports of sexual misconduct and/or other grievances without any recourse for the falsely accused.

### VIII.  As a Result of the Defendants' Actions, Parisi Suffered Severe Emotional And Physical Trauma and His Entire Future is Severely Damaged

89.     As a result of his removal from campus facilities caused by Defendants' actions, Parisi was forced to sleep on the filthy floor of a kitchen in a nearby apartment.

90.     As a result of the Defendants' actions, Parisi's anxiety and digestive disorders were greatly exacerbated, and caused him to be admitted to the emergency room for exhaustion and dehydration.

91.     As a result of the Defendants' actions, Parisi's grades slipped during the semester he was under investigation.

92.     As a result of Parisi's grades slipping, Defendant Drew forced him to take academic leave for a semester.

93.     As a result of the Defendants' actions, Parisi has been forced to attend counseling.

94.     As a result of the Defendants' actions, Parisi's entire academic career is ruined and, without a college education, his overall economic future is completely compromised.

95.     As a result of the Defendants' actions, Parisi's parents' financial resources used to provide Parisi with a top-quality education have been obliterated without any compensation or return.

96.     Without appropriate redress, the Defendants' actions will continue to cause irreversible damages to Parisi, with no end in sight.  Parisi seeks redress from this Court to undo the wrongs occasioned by Drew University, Boulware and Levy on his life, future and family.

### AS AND FOR THE FIRST CAUSE OF ACTION
### AGAINST DEFENDANT DREW
### Violation of Title IX of the Education Amendments of 1972

97.     Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

98.     Title IX of the Education Amendments of 1972 provides, in relevant part, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

99.     Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to

16

Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

100.    Upon information and belief, Defendant Drew receives federal funding in the form of federal grants from numerous federal sources, including, without limitation, Federal Pell Grants and Federal Supplemental Education Grants.

101.    Based on the foregoing, Defendant Drew has deprived Parisi, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Defendant Drew's guidelines and regulations.

102.    Based on the foregoing, Defendant Drew conducted the "investigation" in a manner that was biased against the male being accused by:  failing to investigate Parisi's allegations of wrongdoing against Defendant Boulware and Defendant Levy, barring Parisi from campus arbitrarily and without benefit of due process, failing to engage in a thorough investigation of Defendant Boulware and Defendant Levy's claims, and failing to complete the investigation within the time allowed under the relevant regulations.

103.    Based on the foregoing, Defendant Drew's guidelines and regulations are set up to disproportionately affect the male student population of the Drew University community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

104.    Based on the foregoing, male respondents in sexual misconduct cases at Drew University are discriminated against solely on the basis of sex.  They are subject to discipline without the benefit of due process.

105.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SECOND CAUSE OF ACTION
## AGAINST DEFENDANT DREW
### Breach of Contract

106.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

107.    Based on the aforementioned facts and circumstances, Defendant Drew breached express and/or implied agreement(s) with Parisi.

108.    As a direct and foreseeable consequence of these breaches, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

109.    Parisi is entitled to recover damages for Defendant Drew's breach of the express and/or implied contractual obligations described above.

110.    As a direct and proximate result of the above conduct, actions and inactions, Parisi has suffered physical, emotional and reputational damages, economic injuries and the loss of educational and athletic opportunities.

111.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
## AGAINST DEFENDANT DREW
### Covenant of Good Faith and Fair Dealing

112.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

113.    Based on the aforementioned facts and circumstances, Defendant Drew breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Parisi by

18

failing to abide by its own regulations and by disciplining Parisi notwithstanding the lack of evidence in support of Defendant Boulware's claim of rape, other than Defendant Boulware's flimsy say-so.

114.    As a direct and foreseeable consequence of these breaches, Parisi sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

115.    Parisi is entitled to recover damages for Defendant Drew's breach of the express and/or implied contractual obligations described above.

116.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANT DREW**
<u>**Unfair or Deceptive Trade Practices**</u>

117.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

118.    New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 provides consumer protection by declaring as unlawful "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."

119.    Defendant Drew has engaged in the following acts or practices that are deceptive or misleading in a material way, or committed deceptive acts or practices, which were aimed at

the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances:

    a. by causing Parisi to believe that Defendant Drew would follow the "Daniel's Dictionary" and "Human Rights Policy", copies of which were provided to Parisi and are also available on Defendant Drew's Internet website; and

    b. by causing Parisi to believe that if he paid tuition and fees to Defendant Drew, that Defendants would uphold its obligations, covenants and warranties to Parisi described in "Daniel's Dictionary" and "Human Rights Policy."

120.    Based on the foregoing facts and circumstances, Defendant Drew engaged in unfair or deceptive trade practices in violation of New Jersey's Consumer Fraud Act.

121.    As a result of Defendants' deceptive acts and practices, Parisi sustained tremendous damages, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

122.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**AGAINST DEFENDANT DREW**
**<u>Estoppel and Reliance</u>**

123.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

124.   Defendant Drew's regulations and other standards, procedures and policies and principles constitute representations and promises that Defendant Drew should have reasonably expected to induce action or forbearance by Parisi.

125.   Defendant Drew expected or should have expected Parisi to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that Defendant Drew would not tolerate, and Parisi would not suffer, harassment or be bullied by fellow students and would not deny Parisi his procedural rights should he be accused of a violation of "Daniel's Dictionary" or the "Human Rights Policy."

126.   Parisi relied to his detriment on these express and implied promises and representations made by Defendant Drew.

127.   Based on the foregoing, Defendant Drew is liable to Parisi based on Estoppel.

128.   As a direct and proximate result of the above conduct, Parisi sustained tremendous damages, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

129.   As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**Intentional Infliction of Emotional Distress**

130.   Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

131.   Based on the foregoing facts and circumstances, Defendant Drew intentionally and/or with willful or wanton indifference to the truth, engaged in conduct to remove Parisi from Drew College without regard to the truth of the allegations being made by Defendant Boulware

21

and Defendant Levy and without evidence in support of Defendant Boulware and Defendant Levy's claims, and otherwise intentionally inflicted emotional and physical distress upon Parisi.

132.    Based on the foregoing facts and circumstances, Defendant Levy and Defendant Boulware intentionally and/or with willful or wanton indifference to the truth, accused Parisi of the heinous crime of rape with the goals of removing him from Drew University and subjecting him to criminal prosecution.

133.    The above actions and inactions by Defendants were so outrageous and utterly intolerable that they caused mental anguish and severe emotional distress to Parisi, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

134.    As a direct and proximate result of the above conduct, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

135.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## AGAINST DEFENDANT DREW
### Negligence

136.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

137.    Defendant Drew owed duties of care to Parisi.  Such duties included, without limitation, a duty of reasonable care in the conduct and investigation of the allegations of rape and sexual misconduct against him.

138.    Defendant Drew breached its duties owed to Parisi by removing him from campus arbitrarily and without due process and by failing to complete its investigation into Defendant Boulware and Defendant Levy's accusations in a timely manner.

139.    As a direct and proximate result of the above conduct, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

140.    Defendant Drew was aware of Parisi's medical conditions insofar as he was assigned a special medical room for same by Defendant Drew.  It was foreseeable that Parisi would sustain tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages as a result of Defendant Drew's breach of its duties owed to Parisi by removing him from campus without due process and by failing to complete its investigation into Defendant Boulware and Defendant Levy's accusations in a timely manner.

141.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE EIGHTH CAUSE OF ACTION
### AGAINST DEFENDANT BOULWARE AND DEFENDANT LEVY
### Defamation

142.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

143.    Defendant Boulware and Defendant Levy made defamatory statements about Parisi to Drew University officials, and the Madison Police Department.

144.    Defendant Boulware and Defendant Levy falsely claimed that Parisi engaged in non-consensual sexual intercourse with Defendant Boulware.

23

145.   Defendant Boulware and Defendant Levy made these statements with malice, had knowledge of the falsity of the statements, or, at a minimum, acted with reckless disregard as to the falsity of the statements and the light in which Parisi would be placed.  As a direct and proximate result of the above conduct, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

146.   As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE NINTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
<u>**Declaratory Judgment**</u>

147.   Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

148.   Defendant Drew has committed numerous violations of the Parties' contracts and of federal and state law.

149.   Defendant Boulware and Defendant Levy have committed numerous violations of state law.

150.   Parisi's education and future career have been severely damaged.  Without appropriate redress, the record of Defendant Boulware and Defendant Levy's false complaint will continue to cause irreversible damages to Parisi, with no end in sight.

151.   As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Parisi's formal student record at Drew College.

152.    By reason of the foregoing, Parisi requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the record of Parisi's removal from Drew University be removed; (ii) any record of Defendant Boulware and Defendant Levy's false complaint be permanently destroyed; (iii) Drew University's rules, regulations and guidelines are unconstitutional as applied and (iv) Defendant Boulware and Defendant Levy's statements about Parisi were false.

**AS AND FOR THE TENTH CAUSE OF ACTION**
**AGAINST DEFENDANT BOULWARE AND DEFENDANT LEVY**
**<u>Malicious Use of Process</u>**

153.    Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

154.    Defendant Boulware and Defendant Levy, acting without probable cause and with malice, filed a false complaint with Defendant Drew that Parisi had sexually assaulted Defendant Boulware.

155.    Upon information and belief, Defendant Boulware and Defendant Levy, acting without probable cause and with malice, initiated a false complaint with the Madison Police Department that Parisi had sexually assaulted Defendant Boulware.

156.    As a result of the defamatory and embarrassing allegations contained in the filing, Parisi was subjected to intense humiliation and emotional distress.

157.    As a result of the defamatory and embarrassing allegations contained in the filing, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

158.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE ELEVENTH CAUSE OF ACTION
AGAINST DEFENDANT BOULWARE AND DEFENDANT LEVY
<u>Abuse of Process</u>**

159.   Parisi repeats and realleges each and every allegation hereinabove as if fully set forth herein.

160.   Defendant Boulware and Defendant Levy, acting without probable cause and with malice, filed a false complaint to Defendant Drew.

161.   Upon information and belief, Defendant Boulware and Defendant Levy, acting without probable cause and with malice, initiated a false complaint with the Madison Police Department with the intent of strengthening Defendant Drew's case against Parisi and with the intent of validating their false complaint against Parisi to Defendant Drew.

162.    As a result of Defendant Boulware and Defendant Levy's actions, Parisi was subjected to intense humiliation and emotional distress.

163.    As a result of the defamatory and embarrassing allegations contained in the filing, Parisi sustained tremendous damages, including, without limitation, emotional distress, physical distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

164.    As a result of the foregoing, Parisi is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** for the foregoing reasons, Parisi demands judgment against Defendants as follows:

(i)    on the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-

26

being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)     on the second cause of action for breach of contract, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)    on the third cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)     on the fourth cause of action under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v)      on the fifth cause of action for estoppel and reliance, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi)     on the sixth cause of action for intentional infliction of emotional distress, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vii)    on the seventh cause of action for negligence, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(viii)  on the eighth cause of action for defamation, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ix)  on the ninth cause of action for a declaratory judgment pursuant to 28 U.S.C. § 2201, a judicial declaration that: (i) the record of Parisi's removal from Drew University be removed; (ii) any record of Defendant Boulware and Defendant Levy's false complaint be permanently destroyed; and (iii) Drew University's rules, regulations and guidelines are unconstitutional as applied;

(x)  on the tenth cause of action for malicious use of process, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(xi)  on the eleventh cause of action for abuse of process, a judgment awarding Parisi damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(xii)  awarding Parisi such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         April 8, 2014

                              **LAW OFFICES OF JAN MEYER &
                              ASSOCIATES, P.C.**

                              By:_____
                              **Solomon Rubin
                              Jan Meyer
                              1029 Teaneck Road, Second Floor
                              Teaneck, NJ 07666
                              (201) 862-9500**

                              **-and-**

28

NESENOFF & MILTENBERG, LLP

By:   /s/ **Andrew T. Miltenberg**
**Andrew T. Miltenberg (*pro hac vice* pending)**
**Kimberly C. Lau (*pro hac vice* pending)**
**363 Seventh Avenue, Fifth Floor**
**New York, NY 10001**
**(212) 736-4500**

*Attorneys for Plaintiff Kevin Parisi*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned attorney for Plaintiff hereby certifies, pursuant to Local Civil Rule 11.2, that to the best of his knowledge, the matter in controversy is not the subject of any other action pending in any court or agency or any arbitration.

Dated:   **New York, New York**
         **April 8, 2014**

LAW OFFICES OF JAN MEYER &
ASSOCIATES, P.C.

By:_____
**Solomon Rubin**
**Jan Meyer**
**1029 Teaneck Road, Second Floor**
**Teaneck, NJ 07666**
**(201) 862-9500**

-and-

NESENOFF & MILTENBERG, LLP

By:   /s/ **Andrew T. Miltenberg**
**Andrew T. Miltenberg (*pro hac vice* pending)**
**Kimberly C. Lau (*pro hac vice* pending)**
**363 Seventh Avenue, Fifth Floor**
**New York, NY 10001**
**(212) 736-4500**

*Attorneys for Plaintiff Kevin Parisi*

29

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated:   New York, New York
         April 8, 2014

LAW OFFICES OF JAN MEYER &
ASSOCIATES, P.C.

By:_____
Solomon Rubin
Jan Meyer
1029 Teaneck Road, Second Floor
Teaneck, NJ 07666
(201) 862-9500

-and-

NESENOFF & MILTENBERG, LLP

By:   /s/ Andrew T. Miltenberg
Andrew T. Miltenberg (*pro hac vice* pending)
Kimberly C. Lau (*pro hac vice* pending)
363 Seventh Avenue, Fifth Floor
New York, NY 10001
(212) 736-4500

*Attorneys for Plaintiff Kevin Parisi*